UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GREGORY L. SIMPSON,

                Plaintiff,

v.                                        Case No. 3:18-cv-547-J-39PDB

J.L. GUESS, et al.,

                Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff, Gregory L. Simpson, an inmate of the Florida Department of Corrections (FDOC), is proceeding pro se on an amended civil rights complaint against six corrections officers in their individual capacities (Doc. 10; Am. Compl.).[1] Plaintiff alleges Defendants used excessive force against him in violation of the Eighth Amendment's proscription against cruel and unusual punishment. See Am. Compl. at 3, 6. Defendants jointly move for summary judgment under Rule 56, Federal Rules of Civil Procedure (Rule(s)) (Doc. 74; Motion), with supporting exhibits (Docs. 74-1 through 74-11). Plaintiff has responded to Defendants' motion (Doc. 86; Pl. Resp.).

---

[1] The Court granted Defendants' motions to dismiss the official-capacity claims against them. See Order (Doc. 57).

## II. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

2

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Complaint Allegations[2]

The incident of which Plaintiff complains occurred at Columbia Correctional Institution (CCI) on April 21, 2016. See Am. Compl. at 5. Plaintiff alleges Defendant Guess approached him in an aggressive manner, which led to him being sprayed with chemical agents, restrained, and beaten to unconsciousness. Id. at 6. Plaintiff does not specify which Defendant did what, though he says Defendants Guess, Wynne, Johnson, Roach, and Minshew "attacked" him upon Defendant Bennett's order. Id. at 5-6. Plaintiff was

---

[2] A plaintiff's allegations in his verified complaint are to be given the same weight as an affidavit. See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014).

transported by ambulance to a hospital where he was treated for head trauma, cuts, bruises, and contusions. Id. at 6. As relief, Plaintiff seeks compensatory damages in the amount of $50,000 from each Defendant. Id.

## IV. Motion & Supporting Evidence

Defendants argue they justifiably used force because Plaintiff was exhibiting erratic, aggressive behavior and, even if a jury were to find they used excessive force, Plaintiff would be entitled to no more than nominal damages because his injuries were de minimis. See Motion at 1, 3, 14.

### A. Facts About Incident

Defendants Wynne, Guess, Minshew, Johnson, and Roach executed declarations in support of their motion (Docs. 74-1, 74-2, 74-3, 74-5, 74-6; Def. Exs. A, B, C, E, F). Defendant Guess explains he was "assigned as the Movement Control Officer at Center Gate" when he encountered Plaintiff. See Def. Ex. B ¶ 2. Defendant Guess avers Plaintiff set off the metal detector, so Guess ordered him to pass back through. Plaintiff refused. Id. Plaintiff started shouting obscenities and "began aggressively walking towards [Guess] with clenched fists." Id. Plaintiff refused to submit to hand restraints, so Defendant Guess administered chemical agents, which had no effect. Id. Plaintiff then started punching Defendant Guess, prompting Guess to strike back several times in self-defense. Id.

Defendants Wynne, Minshew, Johnson, and Roach each were assigned to separate housing dormitories that day. They were "called to [the] incident at the Center Gate" at about 5:33 or 5:34 p.m. See Def. Ex. A ¶ 2 (Defendant Wynne, C-dorm); Def. Ex. C ¶ 2; (Defendant Minshew, G-dorm); Def. Ex. E ¶ 2 (Defendant Johnson, D-dorm); Def. Ex. F ¶ 2 (Defendant Roach, E-dorm). When Defendant Roach arrived, he observed Defendant Guess order Plaintiff to submit to hand restraints; Plaintiff walk toward Defendant Guess; Defendant Guess administer chemical agents; Plaintiff punch Defendant Guess in the head and upper torso; and Defendant Guess punch Plaintiff in return. See Def. Ex. F ¶ 2. Defendant Roach then himself administered chemical agents, to which Defendant Guess was exposed, rendering him unable to see or observe further events. Id. See also Def. Ex. B ¶ 2.

Defendant Johnson arrived to the Center Gate at about the same time as Defendant Roach. Like Roach, Johnson observed Defendant Guess spray Plaintiff and Plaintiff strike Guess. See Def. Ex. E ¶ 2. Defendant Johnson saw nothing further because he was "subjected to overspray from the chemical agents." Id. Defendant Minshew arrived as Plaintiff was striking Defendant Guess and Defendant Roach was spraying Plaintiff. See Def. Ex. C ¶ 2.

Thereafter, Defendants Roach, Minshew, and Wynne observed Plaintiff snatch a walking cane from another inmate and attempt to use it as a weapon against staff. See Def. Ex. A ¶ 2; Def. Ex. C ¶ 2; Def. Ex. F ¶ 2. When Plaintiff

5

would not obey Defendant Minshew's order to submit to hand restraints, Minshew sprayed Plaintiff (the third spraying). <u>See</u> Def. Ex. C ¶ 2; Def. Ex. F ¶ 2. Defendant Wynne arrived as Minshew was spraying Plaintiff, "who was swinging a walking cane at staff." <u>See</u> Def. Ex. A ¶ 2. Plaintiff then "lunged" at and hit Defendant Minshew with the cane. <u>See</u> Def. Ex. A ¶ 2; Def. Ex. C ¶ 2. The strike broke Defendant Minshew's left hand. <u>See</u> Def. Ex. C ¶ 2.

Plaintiff then ran toward Defendant Roach swinging the cane. <u>See</u> Def. Ex. A ¶ 2; Def. Ex. F ¶ 2. Defendant Roach administered chemical agents yet again (the fourth spraying). <u>See</u> Def. Ex. A ¶ 2; Def. Ex. F ¶ 2. Plaintiff, still not subdued, ran toward Defendant Wynne and attempted to strike Wynne with the cane. Defendant Wynne administered chemical agents (the fifth spraying). <u>See</u> Def. Ex. A ¶ 2; Def. Ex. F ¶ 2. After the fifth spraying, Plaintiff complied with Defendant Wynne's order to submit to hand restraints. Plaintiff dropped the cane and lay on the ground. <u>See</u> Def. Ex. A ¶ 2; Def. Ex. F ¶ 2. According to Defendants Roach, Wynne, and Minshew, all force ceased at that time. <u>See</u> Def. Ex. A ¶ 2; Def. Ex. C ¶ 2; Def. Ex. F ¶ 2.

Other officers who are not named Defendants observed the incident and offer declarations consistent with Defendants' (Docs. 74-4, 74-7, 74-8; 74-9; Def. Exs. D, G, H, I). For instance, Officers Randall Carter and William Moody observed Defendant Roach administer chemical agents; Plaintiff run toward Defendant Wynne; Defendant Wynne administer chemical agents; and

Plaintiff lay on the ground. <u>See</u> Def. Ex. D ¶ 2; Def. Ex. I ¶ 2. Officers Carter and Moody agree that all force against Plaintiff ceased once he lay on the ground and submitted to hand restraints. <u>See</u> Def. Ex. D ¶ 2; Def. Ex. I ¶ 2.

Officer Seth Thompson, who also offers a declaration, placed Plaintiff in hand restraints. <u>See</u> Def. Ex. D ¶ 2; Def. Ex. H ¶ 2. Officer Thompson did not witness any uses of force; he arrived after Plaintiff had stopped resisting and was on the ground. <u>See</u> Def. Ex. H ¶ 2. Officer Joann Alderman only observed Plaintiff "swinging a broomstick at several officers." <u>See</u> Def. Ex. G ¶ 2. Officer Alderman witnessed no uses of force. <u>Id.</u>

Plaintiff gave a deposition on December 16, 2019 (Doc. 74-10; Def. Ex. J). Plaintiff describes the facts leading up to the incident differently than does Defendant Guess in his declaration. <u>See</u> Def. Ex. J at 14.[3] Plaintiff testified that he was passing through Center Gate returning from evening meal. <u>Id.</u> He had sunglasses on his head facing backwards so as not to cover his face. <u>Id.</u> at 15-16. Plaintiff says Defendant Guess ordered him to remove the sunglasses, which Plaintiff did, but Plaintiff intentionally broke the sunglasses before handing them to Defendant Guess. <u>Id.</u> at 16. Defendant Guess ordered Plaintiff to turn around to cuff up, but Plaintiff refused and began arguing with Guess.

---

[3] Page numbers reflect the pagination assigned by the Court's CM/ECF docketing system, which are found at the top of each page.

When Plaintiff would not comply, Defendant Guess called in a code on his radio and then sprayed Plaintiff with chemical agents. Id. at 16-17.

Plaintiff reacted by trying to "knock the can [of mace] out of [Guess's] hand." Id. at 17. Plaintiff, unable to disarm Defendant Guess, ran away. Id. Plaintiff saw other officers coming "in pursuit," so he grabbed a cane from another inmate, which he waved around to "keep them at bay." Id. He claims his intent was not to use the cane to strike the officers, nor does he recall hitting Defendant Minshew. Id. at 18, 28. Plaintiff testified that he did not run toward any of the officers but was in fact trying to run away from them because the officers at CCI have a "history of just brutally beating people." Id. at 18-19.

Plaintiff testified that after he surrendered and was fully restrained face-down on the ground, Defendant Bennett walked over and told the officers to "kick that b*tch to sleep." Id. at 28. Defendants then started beating and kicking Plaintiff. Id. at 28-29. Plaintiff said Defendants' conduct rendered him unconscious. Id. at 29. Plaintiff received four disciplinary reports for the incident. Id. at 31.

## B. Facts About Injuries

Plaintiff testified that his left eye was closed shut for almost three weeks after the incident. Id. at 32. His left eye still bothers him, closing on its own and not focusing completely. Id. at 40, 43. He also complains the incident causes his jaw to "snap" or click when he opens his mouth. Id. At the time of

8

the incident, Plaintiff's right knee "was skinned up," two of his teeth became loose, and he experienced severe chest pains. Id. at 40. He no longer has pain in his knee or chest, and his teeth have "tighten[ed] back up." Id. at 40-41. Plaintiff has lasting emotional injuries as well, including depression and anxiety. Id. at 49.

According to the FDOC post-use-of-force-exam record (Doc. 74-11; Def. Ex. K), Plaintiff immediately complained of head pain, and the nurse recorded the following injuries: swollen eyes, with the left eye swollen closed; abrasion to the forehead; abrasion to the bridge of the nose; swollen bottom lip; and an abrasion to the arm. See Def. Ex. K at 5, 6. Plaintiff was sent by ambulance to the emergency room for possible orbital fracture. Id. at 8. At the hospital, Plaintiff complained of chest pain, headache, nausea, and neck pain. Id. at 10, 13. A medical entry notes Plaintiff "experienced no loss of consciousness." Id. at 14. The physician ordered a urine drug screen, which was normal, and CT scans of the head, face, chest, and cervical spine, all of which were normal. Id. at 15-16.[4] An EKG also was normal. Id. at 32-33. The physician diagnosed the following: closed head injury without cranial wound, left eye contusion, and

---

[4] The prison guards reported to hospital staff that Plaintiff had smoked "some spice or k-2 and attacked one of the prison guards." See Def. Ex. K at 13. The CT reports reference drug use as causing or contributing to Plaintiff's injuries: [s]tatus post fall, drug overdose"; "[Plaintiff] fell during a drug overdose." Id. at 27, 29, 30.

chest contusion. Id. at 17. Plaintiff was released with instructions to follow up with the prison physician in the morning. Id. at 34.

Kellie Caswell, a Registered Nurse, who works for the FDOC as a Legal Nurse Consultant, offers a declaration in support of Defendants' motion. See Def. Ex. K at 1-2. Based solely on a review of the relevant medical records, Nurse Caswell avers Plaintiff's head and face injuries do not appear to be "the result of repeated kicking or punching while lying on the ground." Id. at 2. Rather, she contends, Plaintiff's injuries "likely" are attributable to the strikes Defendant Guess admittedly administered to Plaintiff's face. Id.

## V. Legal Analysis & Conclusions of Law

## A. Eighth Amendment: Excessive Force

It is well understood that prison guards are charged with maintaining order and protecting inmates and staff. Indeed, Eighth Amendment jurisprudence permits prison guards leeway to use force when necessary "to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320 (1986). See also Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991). However, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). In ensuring inmates are not subject to "punishment grossly disproportionate to the severity of the offense," courts must be mindful that they should normally not interfere in matters of inmate

10

discipline or institutional security. Id. at 322. After all, "in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Whitley, 475 U.S. at 320.

Accordingly, courts must balance concerns of an inmate's right to be free from cruel and unusual punishment with a prison official's obligation to ensure a safe and secure institution. Ort, 813 F.2d at 321-22. Because of the deference afforded prison officials responding to a disturbance, an inmate against whom force is used to restore order demonstrates an Eighth Amendment violation "only if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'" Williams, 943 F.2d at 1575 (emphasis is original). This inquiry requires courts to consider various factors, including the need for force, the extent of force used in relation to the prisoner's conduct, the threat of harm to staff and inmates, and the injuries inflicted. See id.; Whitley, 475 U.S. at 321. Nonetheless, if an officer reasonably uses force to quell a disturbance, the force should cease once the behavior giving rise to the need for force abates. Ort, 813 F.2d at 324.

The evidence shows Defendants Guess, Roach, Wynne, and Minshew used reactionary force against Plaintiff because Plaintiff refused to submit to hand restraints and ran away from multiple officers. Indeed, Plaintiff admits he refused to submit to hand restraints when Defendant Guess ordered him to do so, tried knocking a can of mace out of Defendant Guess's hand, ran from Defendant Guess and other officers, and swung a cane at the officers to keep them away from him. <u>See</u> Def. Ex. J at 17-18. While Plaintiff may not recall or have intended, he broke Defendant Minshew's left hand with the cane. <u>See</u> Def. Ex. C ¶ 2; Def. Ex. K at 4. All this was occurring at the Center Gate with numerous officers and inmates present. <u>See</u> Def. Ex. K at 24. Thus, there was a risk of harm not only to Plaintiff and the officers directly involved but to other inmates and staff as well.

Accepting, without deciding, that the officers were justified in using force initially, the parties tell markedly different stories about what happened after Plaintiff stopped resisting and surrendered to restraints. Defendants agree all force ceased at that point. Plaintiff, however, swears in his complaint and testified at deposition that, once he was fully restrained and lying face-down on the ground, Defendant Bennett ordered the other Defendants to beat him, and they complied. <u>See</u> Am. Compl. at 5; Def. Ex. J at 28-29. Defendants offer no evidence to rebut these assertions, which, if true, suggest an Eighth Amendment violation. <u>See, e.g.</u>, <u>Ort</u>, 813 F.2d at 323 ("Surely it would have

12

been cruel and unusual punishment if, <u>after</u> the dangerous situation had subsided, the prison officer . . . had shot the inmate . . . as punishment for his role in the riot." (emphasis in original)). Additionally, the parties provide differing accounts of what precipitated the use of physical force by Defendant Guess: Plaintiff says he attempted to knock a can of mace from Guess's hands, <u>see</u> Def. Ex. J at 17, while Defendants Guess, Roach, and Johnson aver Plaintiff punched Defendant Guess, <u>see</u> Def. Ex. B ¶ 2; Def. Ex. F ¶ 2; Def. Ex. E ¶ 2. Depending on the "story" a jury were to find credible, Defendant Guess's use of physical force may or may not have been justified.

At summary judgment, the Court must accept Plaintiff's version of events as true. <u>See</u> <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (explaining a district court considering a motion for summary judgment "must view all evidence and make all reasonable inferences" in the non-movant's favor). This is so because when two parties' stories conflict, neither of which is blatantly contradicted by indisputable evidence, a district court may not make credibility determinations in favor of one party over the other. <u>See</u> <u>Sears v. Roberts</u>, 922 F.3d 1199, 1206, 1208-09 (11th Cir. 2019) (reversing the district court's entry of summary judgment in favor of the officer-defendants because the officers' documentary evidence, including disciplinary reports and affidavits, consisted of "various forms of their own testimony," which directly contradicted Plaintiff's sworn allegations).

13

Defendants offer no evidence that blatantly contradicts Plaintiff's version of events. Accepting Plaintiff's account as true, the record presents "a classic swearing match, which is the stuff of which jury trials are made." <u>Id.</u> at 1208 (quoting <u>Feliciano v. City of Miami Beach</u>, 707 F.3d 1244, 1253 (11th Cir. 2013)). As such, there remain genuine issues of material fact regarding whether Defendants used excessive force against Plaintiff. <u>See id.</u> at 1208-09.

## B. Physical Injuries & Damages

Defendants argue Plaintiff sustained no more than <u>de minimis</u> injuries and is thus not entitled to recover compensatory or punitive damages.[5] <u>See</u> Motion at 11. The Prison Litigation Reform Act (PLRA) requires that a plaintiff seeking damages demonstrate the conduct he alleges violated his constitutional rights caused a physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

The PLRA does not define "physical injury," but the Eleventh Circuit has explained it is one that is not simply <u>de minimis</u>, though it "need not be significant." <u>Dixon v. Toole</u>, 225 F. App'x 797, 799 (11th Cir. 2007) (per curiam) (quoting <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11th Cir. 1999)).

---

[5] Plaintiff seeks only compensatory damages. <u>See</u> Am. Compl. at 6.

Bruising and scrapes fall into the category of <u>de minimis</u> injuries. <u>Id.</u>; <u>Mann v. McNeil</u>, 360 F. App'x 31, 32 (11th Cir. 2010) (holding vague back injuries and scrapes amounted to <u>de minimis</u> injuries).

The Eleventh Circuit recently pronounced that the PLRA "was not intended to allow only those prisoner-plaintiffs with severe physical injuries to recover compensatory or punitive damages." <u>Thompson v. Smith</u>, 805 F. App'x 893, 904 (11th Cir. 2020). The court clarified that to constitute a "physical injury" under the PLRA, a prisoner's condition need not be so severe as to require "professional medical attention." <u>Id.</u> Rather, temporary injuries, such as those associated with the effects of pepper spray, may satisfy the PLRA's standard. <u>Id.</u> at 904-05.

On this record, the Court is not inclined to conclude as a matter of law that Plaintiff's injuries are <u>de minimis</u> under the PLRA. Plaintiff's injuries were serious enough to require emergency medical intervention, and the records show he immediately complained of pain in multiple areas of his body. <u>See</u> Def. Ex. K at 5, 10, 13. Moreover, Plaintiff continues to experience a popping jaw and problems with his left eye. <u>See</u> Def. Ex. J at 40, 43. Even under the definition Defendants advance for the term "<u>de miminis</u>," Plaintiff's injuries cannot be characterized as such. Defendants quote an order of the United States District Court for the Northern District of Texas, which articulated a "common-sense" approach to assessing whether a prisoner's

15

injury meets the PLRA's <u>de minimis</u> threshold: "would the injury require . . . a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?" <u>See</u> Motion at 12 (quoting <u>Luong v. Hatt</u>, 979 F. Supp. 481, 486 (N.D. Tex. 1997)). Plaintiff not only received treatment at CCI, per the post-use-of-force protocol, but prison medical staff found his injuries significant enough to warrant evaluation at the emergency room, where Plaintiff underwent numerous CT scans and other tests. <u>See</u> Def. Ex. K at 5, 15-16. This evidence is enough to permit a reasonable fact finder to conclude Plaintiff's injuries meet the "more-than-<u>de</u>-<u>mimimis</u>" threshold.

Even if Defendant Guess was justified in punching Plaintiff, the record does not permit the conclusion that all of Plaintiff's injuries are attributable to such conduct. For instance, Defendant Guess avers he punched Plaintiff several times in the face, <u>see</u> Def. Ex. B ¶ 2, and Defendant Roach avers Defendant Guess struck Plaintiff both in the head and upper torso, <u>see</u> Def. Ex. F ¶ 2. No other Defendant claims to have used physical force against Plaintiff, yet he sustained extensive facial injuries, including a completely swollen-shut eye, an abrasion to the forehead, an abrasion to the bridge of the nose, a swollen bottom lip, and lasting jaw problems. Additionally, he had

severe pain in his neck, head, and chest. It is difficult to fathom all of those injuries were caused by a single officer's punches.[6]

Defendants fail to demonstrate the absence of a genuine issue of material fact on the issue of damages. Thus, Plaintiff's request for compensatory damages is not barred as a matter of law under the PLRA.

## VI. Conclusion

Defendants are not entitled to summary judgment. Because this case is in a posture to proceed to settlement conference and trial, the Court finds Plaintiff is entitled to the appointment of counsel to assist him. See 28 U.S.C. § 1915(e)(1); Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999). Therefore, the Court will refer this case to the Jacksonville Division Civil Pro Bono Appointment Program.

Accordingly, it is

**ORDERED**:

1. Defendant's motion for summary judgment (Doc. 74) is **DENIED**.

---

[6] Assuming Defendant Guess's use of physical force was justified, Nurse Caswell's declaration does not prove Plaintiff's injuries were caused solely by that conduct. Nurse Caswell did not witness the events, and she is not offered as an expert who can render an opinion on the cause of Plaintiff's documented injuries. Even if she could, Nurse Caswell offers no explanation for her conclusory opinion.

17

2. This case is **REFERRED** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of December 2020.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Gregory L. Simpson
Counsel of Record

18